## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - ○

|  | : |  |
|---|---|---|
| In re: | : | Chapter 11 |
|  | : |  |
|  | : | Case No. 21-11194-JTD |
| SEQUENTIAL BRANDS GROUP, INC, *et al.,*[1] | : |  |
|  | : | Jointly Administered |
|  | : |  |
|  | : | **Hearing Date: February 22, 2022, at 10:00 a.m.** |
| Debtors. | : | **Obj. Deadline: February 15, 2022, by 4:00 p.m.** |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**UNITED STATES TRUSTEE'S OBJECTION TO THE FIRST AMENDED JOINT PLAN OF LIQUIDATION OF SEQUENTIAL BRANDS GROUP, INC., AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE (D.I 402)**

Andrew R. Vara, the United States Trustee for Region 3 and 9 (the "U.S. Trustee"), by and through his undersigned attorney, hereby files this Objection to the First Amended Joint Plan of Liquidation of Sequential Brands Group, Inc. and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code (D.I. 402) (the "Objection"), and respectfully states as follows:

## PRELIMINARY STATEMENT

1.      The Debtors' Plan should not be confirmed because it imposes third-party releases on numerous non-debtor parties without their consent, merely because such parties are related in some fashion to one the Debtors' secured lenders, or to the Debtors themselves.  Not only will no affirmative consent be sought from such related parties, but they also will not be provided any

---

[1] The Debtors, along with the last four digits of each Debtor's tax identification number, are: Sequential Brands Group, Inc. (2789), SQBG, Inc. (9546), Sequential Licensing, Inc. (7108), William Rast Licensing, LLC (4304), Heeling Sports Limited (0479), Brand Matter, LLC (1258), SBG FM, LLC (8013), Galaxy Brands LLC (9583), The Basketball Marketing Company, Inc. (7003), American Sporting Goods Corporation (1696), LNT Brands LLC (3923), Joe's Holdings LLC (3085), Gaiam Brand Holdco, LLC (1581), Gaiam Americas, Inc. (8894), SBG-Gaiam Holdings, LLC (8923), SBG Universe Brands, LLC (4322), and GBT Promotions LLC (7003). The Debtors' corporate headquarters and the mailing address for each Debtor is 105 E. 34th Street, #249, New York, NY 10016.

ability to opt-out of such releases, and in most cases will not even receive notice that such releases

will be forced on them, because they are not themselves creditors of the Debtor.  They include, by

way of example, all current and former employees of the Debtors' lenders, all current and former

employees of the affiliates of the Debtors' lenders, and all current and former employees of the

Debtors' affiliates.

2.      There is no basis or justification in these cases for the approval such non-consensual

third-party releases under the Bankruptcy Code.

3.      For these reasons, set forth in more detail below, the Plan should not be

confirmed.

## JURISDICTION, VENUE AND STANDING

4.      Under (i) 28 U.S.C. § 1334; (ii) applicable order(s) of the United States District

Court for the District of Delaware issued pursuant to 28 U.S.C. § 157(a); and (iii) 28 U.S.C. §

157(b)(2)(A), this Court has jurisdiction to hear and determine this Objection.

5.      Under 28 U.S.C. § 586, the U.S. Trustee is charged with overseeing the

administration of Chapter 11 cases filed in this judicial district.  This duty is part of the U.S.

Trustee's overarching responsibility to enforce the bankruptcy laws as written by Congress and

interpreted by the courts.  *See Morgenstern v. Revco D.S., Inc. (In re Revco D.S., Inc.)*, 898 F.2d

498, 500 (6th Cir. 1990) (describing the U.S. Trustee as a "watchdog").

6.      Pursuant to 28 U.S.C. § 586(a)(3)(B), the U.S. Trustee has a duty to monitor and

comment on plans and disclosure statements filed in chapter 11 cases.

7.      Under 11 U.S.C. § 307, the U.S. Trustee has standing to be heard on this Objection.

*See United States Trustee v. Columbia Gas Sys., Inc. (In re Columbia Gas Sys., Inc.),* 33 F.3d 294,

295-96 (3d Cir. 1994) (noting that U.S. Trustee has "public interest standing" under 11 U.S.C. § 307, which goes beyond mere pecuniary interest).

## FACTS AND BACKGROUND

8.      The Debtors filed voluntary petitions for relief under Chapter 11 on August 31, 2021, the Petition Date.  On December 7, 2021, the Debtors filed their Joint Plan of Liquidation (the "Plan") and their Disclosure Statement in Support of the Joint Plan of Liquidation (the "Disclosure Statement") (D.I. 338 & 339).

9.      On December 7, 2021, the Debtors filed their Motion, seeking, among other things, Entry of an Order (I) Approving Disclosure Statement, (II) Fixing Voting Record Date, (III) Scheduling Plan Confirmation Hearing and Approving Form and Manner of Related Notice and Objection Procedures, (IV) Approving Solicitation Packages and Procedures and Deadlines for Soliciting, Receiving, and Tabulating Votes of the Plan, and (V) Approving the Form of Ballot and Notice to Non-Voting Classes (the "Procedures Motion") (D.I. 340).

10.      On January 3, 2022, the Debtors filed their First Amended Joint Plan of Liquidation and First Amended Disclosure Statement in Support of the First Amended Plan of Liquidation (D.I. 380 & 381).

11.      On January 7, 2022, the Court entered the Order Approving, among other things, the Disclosure Statement and granting the Procedures Motion (D.I. 392).

12.      On January 12, 2022, the Debtors filed the First Amended Joint Plan of Liquidation of Sequential Brands Group, Inc. and its Debtor Affiliates (Solicitation Version) (the "Plan") (D.I. 402).

13.    Under the Plan, Class 3 (the Term B Secured Claims) is the only class of claims entitled to vote on the Plan.[2] The claimants in all other impaired classes are not entitled to vote on the Plan, but are not bound by the Third-Party Releases (defined below). Plan at Art. I. A. ¶ 98 (definition of "Releasing Party").

## A. Provisions Related to Third-Party Releases

14.    The Plan contains a provision entitled "Releases by Holders of Claims and Interest" at Art. VIII.B.2 (the "**Third-Party Releases**"), which provides:

> As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, the Released Parties will be deemed conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by the Releasing Parties, in each case, from and against all claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action, and liabilities whether liquidated or unliquidated, direct, indirect or derivative, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or hereinafter arising, whether in law or equity, whether sounding in tort or contract, whether arising under federal or state statutory or common law, or any other applicable international, foreign, or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, based on or relating to, or in any manner arising from, in whole or in part, any act, omission, transaction, event, or other occurrence *taking place on or prior to the Effective Date (including prior to the Petition Date) in any way relating to the Debtors*, the Estates, the Debtors' capital structure, the Term B Credit Agreement and the other Term B Loan Documents, the Chapter 11 Cases, the Plan, the RSA, the Disclosure Statement, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Releasing Party and any Released Party, including, without limitation, the administration of Claims and Interests prior to or in the Chapter 11 Cases, the negotiation, formulation, or preparation of the Plan, the RSA, the Disclosure Statement, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in this Plan, the Debtors' in or out-of-court restructuring and recapitalization efforts, the

---

[2]    The Debtors and the Term B Lenders executed a Restructuring Support Agreement ("RSA"), dated as of August 31, 2021. Plan at Art. I, A. 101 in which the Term B Lenders consented to give Third-Party Releases. RSA at Section 1.2 (f)(iii) (D.I. 3-2).

restructuring of any Claim or Interest before or during the Chapter 11 Cases, the documents in the Plan Supplement, the Asset Purchase Agreements, the Bidding Procedures Order, the Sale Transactions, the Sale Order, the DIP Orders and the DIP Documents, and any related agreements, instruments, and other documents, and the negotiation, formulation, preparation, dissemination, filing, pursuit of consummation, or implementation thereof, the solicitation of votes with respect to this Plan, or any other act or omission or related agreements, instruments, or other documents, or any other act, omission, transaction, agreement, event, or other occurrence taking place before the Effective Date.

Notwithstanding anything to the contrary in the foregoing, the release set forth above does not release any post-Effective Date obligations of any Person under this Plan or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement this Plan. Moreover, the foregoing release shall have no effect on the liability of, or any Cause of Action against, any Entity that results from any act or omission that is determined in a Final Order to have constituted actual fraud, willful misconduct, criminal acts, or reckless or gross negligence.

Plan at Art. VIII. B. 2 (emphasis added).

15.    The Plan contains a defined term for **Released Party** at Art. I.A. ¶ 97:

"Released Party" means each of the following in its respective capacity as such: (i) the Debtors, (ii) the Term B Lenders, (iii) the Term B Agent, (iv) the DIP Lenders, (v) the DIP Agent, and ***(vi) with respect to each of the Entities in clauses (i) through (v), each such Entity's current and former Affiliates and subsidiaries and each such Entity's, Affiliate's, and subsidiary's respective current and former officers, directors, managers, principals, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other professionals;*** provided that in each case, an Entity shall not be a Released Party if it timely "opts-out" of the releases set forth in Article VIII.B.2 of this Plan by checking the box on its respective Ballot.

Plan at Art. I. A. ¶ 97 (emphasis added).

16.    The Plan contains a defined term for **Releasing Party** at Art. I.A. ¶ 98:

"Releasing Party" means (i) the Debtors, (ii) the Estates, (iii) any Entity seeking to exercise the rights of the Estates, including, without limitation, any successor to the Debtors or any Estate representative appointed or selected pursuant to section 1123(b)(3) of the Bankruptcy Code, (iv) all

> Holders of Claims that (a) vote to accept this Plan and/or (b) are entitled to vote to accept or reject this Plan and that abstain from voting on this Plan or vote to reject this Plan but, in either case, do not "opt-out" of the releases set forth in Article VIII.B.2 of this Plan by checking the opt-out box on their respective Ballot and submitting the Ballot such that the Ballot is timely received and effective, and (v) the ***Released Parties.***

Plan at Art. I. A. ¶ 98 (emphasis added).

17.     Reading the definitions together, ***Releasing Parties*** include all of the ***Released Parties***, which in turn include all of the ***Released Parties'*** "current and former Affiliates and subsidiaries and each such Entity's, Affiliate's, and subsidiary's respective current and former officers, directors, managers, principals, employees, agents, financial advisors, attorneys, accountants,  investment bankers, consultants, representatives, and other professionals," (collectively, the "**Related Releasing Parties**").   Thus, the Plan forces, for example, all current and former employees of the Term B Lenders to release their direct claims ***against their own employer*** that are "in any way relating to the Debtors." *See* Plan, Art. VIII.B.2.  The same is true for the employees of the Term B Agent, the DIP Lenders, and the DIP Agent (collectively, with the Term B Lenders, the "**Debtors' Lenders**").  The Third-Party Release will also require the Debtors' current and former employees to release their claims against the Debtors, even through the Debtors are not entitled to a discharge because they are liquidating.  The scope of the Related Releasing Parties is so broad that it even covers the employees of ***affiliates*** of the Debtors' Lenders, as well as employees of the Debtors' own affiliates.

18.     A number of the categories of Related Releasing Parties, such as "agents," "consultants," and "representatives," are broad and ill-defined.  This leads to the possibility of uncertainty in the future as to whether any particular person or entity is a Releasing Party under the Plan due to their relationship to a Released Party.

## LAW, ANALYSIS AND ARGUMENT

**A.    No Notice Was Provided to Numerous Parties That Their Claims Against Non-Debtors Will Be Stripped Away By the Plan**

19.    There is nothing in the record to indicate that the Confirmation Hearing Notice, or any other notice, was  served on the employees and numerous other Related Releasing Parties of the Debtors' Lenders and their affiliates to notify them that the Plan will strip them of their rights to pursue their direct claims against their own employers, as well as against a  number of other non-debtor Released Parties.

20.    While the Debtors' own employees may have been served with the Confirmation Hearing Notice, it is hard to imagine they would have been able to wade through the complicated intricacies of the intertwined definitions of Released Parties and Releasing Parties to understand that they would be deemed to release not only the Debtors, but a number of non-debtor parties as well.

21.    In *Folger Adam Security, Inc. v. DeMatteis/MacGregor*, 209 F.3d 252 (3d Cir. 2000), the Third Circuit stated: "Due process requires 'notice reasonably calculated, under all the circumstances, to apprize interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Id.* at 265 (citations omitted).

22.    The Debtors have not provided notice to the Related Releasing Parties that is reasonably calculated, under all the circumstances, to apprize them of the pendency of this action and to afford them an opportunity to present their objections to being compelled to give Third-

Party Releases.  *Id.*[3]  Therefore, the Plan may not be confirmed  unless  it is modified so that no Third-Party Releases are imposed on the  Related Releasing Parties.

**B.** **The Plan is Not Confirmable Due to the Inclusion of Non-Consensual Third-Party Releases**

> **i.**     ***The Third-Party Releases Imposed on the Related Releasing Parties Are Not Consensual***

23.     As set forth above, the Third-Party Releases in the Plan, which benefit numerous non-debtors, will be imposed on the Related Releasing Parties without their affirmative consent, or even the ability to opt-out, and in most instances without their having received any notice.    As such, the Third-Party Releases being deemed from the Related Releasing Parties are non-consensual.

24.     To the extent the Third-Party Releases are being forced on parties without their affirmative consent, they are non-consensual.[4]  *See Emerge Energy Services LP*, Case No. 19-11563, 2019 Bankr. LEXIS 3717, *52.  (Bankr. D. Del, Dec. 5, 2019)(consent to a Third-Party Release "cannot be inferred by the failure of a creditor or equity holder to return a ballot or Opt-Out Form."); *In re Washington Mutual, Inc.*, 442 B.R. 314, 355 (Bankr. D. Del. 2011) (holding that an "opt out mechanism is not sufficient to support the third party releases . . . particularly with respect to parties who do not return a ballot (*or are not entitled to vote in the first*

---

[3]     In vacating the Bankruptcy Court's order confirming the plan in *Joel Patterson v. Mahwah Bergen Retail Group, Inc.*, No. 3:21CV167 (DJN), 2022 WL 135398 (E.D. Va. Jan. 13, 2022)*,* the District Court for the Eastern District of Virginia noted, "[t]he Bankruptcy Court did not order that any notice or opt-out forms be sent to all of the Releasing Parties, including the current and former employees*,* consultants, accountants or attorneys of Debtors, their affiliates, lenders, creditors or interest holders." *Id.* at *7.

[4]     Not all reported decisions from this District have required affirmative consent.  *See In re Indianapolis Downs, LLC*, 486 B. R. 286, 304-05 (Bankr. D. Del. 2013); *U.S. Bank N.A. v. Wilmington Tr. Co. (In re Spansion, Inc.)*, 426 B.R. 114, 144 (Bankr. D. Del 2010).  In *Spansion*, the ruling was limited to unimpaired classes that were "being paid in full."  *Id.* at 144.

8

*place*).")(emphasis added); *In re Coram Healthcare Corp.*, 315 B.R. 321, 335 (Bankr. D. Del. 2004) (holding that the "Trustee (and the Court) do not have the power to grant a release of the Noteholders on behalf of third parties," and that such release must be based on consent of the releasing party); *In re Exide Technologies*, 303 B.R. 48, 74 (Bankr. D. Del. 2003) (approving releases which were binding only on those creditors and equity holders who accepted the terms of the plan); *In re Zenith Electronics Corp.*, 241 B.R. 92, 111 (Bankr. D. Del. 1999) (release provision had to be modified to permit third parties' release of non-debtors only for those creditors who voted in favor of the plan); *see also Joel Patterson v. Mahwah Bergen Retail Group, Inc.*, No. 3:21CV167 (DJN), 2022 WL 135398, *31 (E.D. Va. Jan. 13, 2022)(District Court held that "the Bankruptcy Court erred both factually and legally in finding the Third-Party Releases to be consensual.  Failure to opt out, without more, cannot form the basis of consent to the release of a claim."); *In re SunEdison, Inc.*, 576 B.R. 453 (Bankr. S.D.N.Y. 2017) (under principles of New York contract law, a creditor could not be deemed to consent to third-party releases merely by failing to object to the plan, even when the disclosure statement made it clear that such a consequence would result); *In re Chassix Holdings*, 533 B.R. 64, 79-80 (Bankr. S.D.N.Y. 2015)(limiting third-party releases to those who voted to accept the plan, or affirmatively elected to provide releases; consent would not be deemed from creditors who failed to return a ballot, or from unimpaired creditors).

25.     Under the holding of *Emerge Energy*, *Washington Mutual*, and the other cases cited above, the Debtor' Third-Party Releases render the Plan unconfirmable because it releases claims against non-debtor parties held by other non-debtor parties, namely the Related Releasing Parties, without their affirmative consent.

26.     Not only is there no affirmative consent from any of the Related Releasing Parties, but these parties are not afforded the ability to opt-out of giving the releases. In addition, as discussed above, the vast majority of the Related Releasing Parties will not even have received notice of the confirmation hearing, or otherwise be notified that they are going to have releases imposed on them in favor of numerous non-debtors, including their own employers.

### ii.     *The Plan Does Not Meet the Requirements for Non-Consensual Releases*

27.     In *Continental*, 203 F.3d 203 (3d Cir. 2000), the Third Circuit surveyed cases from various circuits as to when, if ever, a non-consensual third-party release is permissible. The Court acknowledged that a number of Circuits do not allow such non-consensual releases under any circumstances. *See id.* at 212. Other Circuits, the Court found, "have adopted a more flexible approach, albeit in the context of extraordinary cases." *Id.* at 212-13 (citing Second Circuit cases where releases were upheld for "widespread claims against co-liable parties" and a Fourth Circuit mass tort case). "A central focus of these three reorganizations was the global settlement of massive liabilities against the debtors and co-liable parties. Substantial debtor co-liable parties provided compensation to claimants in exchange for the release of their liabilities and made these reorganizations feasible." *Id.* at 213; *see also*, *In re Metromedia Fiber Network, Inc.*, 416 F.3d 136, 141 (2d Cir. 2005) (noting a third-party release may be granted "only in rare cases").

28.     The Third Circuit in *Continental* ultimately determined that the proposed releases in that case, which enjoined shareholder lawsuits against debtors' directors and officers, did "not pass muster under even the most flexible test for the validity of non-debtor releases." 203 F.3d at 214. Therefore, the Court determined that it "need not speculate on whether there are circumstances under which we might validate a non-consensual release that is both necessary and

given in exchange for fair consideration." *Id.* at 214, n. 11.   However, the Court did describe the "hallmarks of permissible non-consensual releases" to be "fairness, necessity to the reorganization, and special factual findings to support these conclusions." *Id.* at 214.

29.    The Third Circuit Court of Appeals recently referenced *Continental* in *In re Millennium Lab Holdings II, LLC*, 945 F.3d 126 (3d Cir. 2019), as one of the precedents, along with *In re Global Indus. Techs., Inc.*, 645 F.3d 201, 206 (3d Cir. 2011), regarding nonconsensual third-party releases.   The Third Circuit indicated that these decisions "set forth *exacting standards* that must be satisfied if such releases and injunctions are to be permitted." 945 F.3d at 139 (emphasis added).[5]

30.    In *In re Genesis Health Ventures, Inc.*, 266 B.R. 591 (Bankr. D. Del. 2001), the Court held that a clause in the plan which released claims of any creditors or equity holders against the senior lenders for any act or omission in connection with the bankruptcy cases and reorganization process required factual showings under *Continental* – that the releases were necessary for the reorganization and were given in exchange for fair consideration. *Id.* at 607. The Court elaborated that "necessity" under *Continental* requires a showing: (a) that the success of the debtors' reorganization bears a relationship to the release of the non-consensual non-debtor parties and (b) that the non-debtor parties being released from liability have provided "a critical financial contribution to the debtors' plan" in exchange for the receipt of the release. *Id.* at 607. A financial contribution is considered "critical" if without the contribution, the debtors' plan would be infeasible. *Id.*  Fairness of a release is determined by examining whether non-consenting non-

---

[5]    Although not directly addressed by the Third Circuit in *Continental*, *Millennium Lab,* or *Global Indus.*, the issue of whether the bankruptcy court has statutory authority to confirm a plan that includes non-consensual releases between non-debtors was recently addressed by the United States District Court for the Southern District of New York in *In re Purdue Pharma, L.P.*, No. 21 CV 7532 (CM), 2021 WL 5979108 (S.D.N.Y. Dec. 16, 2021). That court held that no such statutory authority existed. 2021 WL 5979108 at * 69-70.

debtors are receiving reasonable consideration in exchange for the release. *Id.* at 608. In most instances of a release provision in a plan, this will entail examining the proposed dividend that non-consenting creditors will receive under a plan with the releases compared to what they would receive under a plan without the releases. *See id.*; *see also In re Spansion, Inc.*, 426 B.R. 114, 144 (Bankr. D. Del 2010) (applying same factors).

31.    The *Genesis* Court found that the senior lenders had made a financial contribution to the plan, which allowed the debtors to make the 7.34% distribution to the unsecured creditors, who otherwise would be "out of the money." *Id.* at 608. Ultimately, though, the Court found that such contribution was not enough, because "even if the threshold Continental criteria of fairness and necessity for approval of non-consensual third-party releases were marginally satisfied by these facts . . . . [the] financial restructuring plan under consideration here would not present the *extraordinary circumstances* required to meet even the most flexible test for third party releases." *Id.* (emphasis added).

32.    In the present cases, there is nothing in the record to indicate the presence of "extraordinary circumstances," or that that the high threshold necessary for approval of non-consensual third-party releases has been met with respect to each of the non-debtor parties that would be the recipients of these non-consensual releases from the Related Releasing Parties. As to the Debtors' directors and officers, who are among the beneficiaries of the Third-Party Releases, the Third Circuit Court of Appeals and this Court have already determined are not entitled to non-consensual third-party releases. *See PWS Holding,* 228 F.3d at 245-46 ("§ 524(e) makes clear that a discharge in bankruptcy does not extinguish claims by third parties against guarantors or directors and officers of the debtor for the debt discharged in bankruptcy."); *Continental,* 203 F.3d at 215 ("[W]e have found no evidence that the non-debtor D & Os provided a critical financial

12

contribution to the Continental Debtors' plan that was necessary to make the plan feasible in exchange for receiving a release of liability"); *Washington Mutual*, 442 B.R. at 354 ("[T]here is no basis for granting third party releases of the Debtors' officers and directors, even if it is limited to their post-petition activity. The only 'contribution' made by them was in the negotiation of the Global Settlement and the Plan. Those activities are nothing more than what is required of directors and officers of debtors in possession (for which they have received compensation and will be exculpated); they are insufficient to warrant such broad releases of any claims third parties may have against them. . . ."); *see also Genesis*, 266 B.R. at 606–07 (in rejecting a *debtor's* release of its directors, officers and employees, the Court held that, "the officers, directors and employees have been otherwise compensated for their contributions, and the management functions they performed do not constitute contributions of 'assets' to the reorganization.").

33.     The non-consensual Third-Party Release in these cases also include releases by the Related Releasing Parties of all of the Debtors' affiliates, through the definition of "Released Party."   The Court in *Washington Mutual* disallowed releases in favor of non-debtor affiliates because no evidence had been offered as to who the affiliates were, or why they should get a discharge without filing their own bankruptcy cases.  442 B.R. at 354.   The same is true here.

34.     The Debtors have the burden of establishing whether any of the *Continental*/*Genesis* factors have been met for each of the non-debtors who are the beneficiaries of the non-consensual Third-Party Releases.   The Debtors should not be allowed the unfettered discretion to force parties that are related to creditors to discharge nondebtors from liability, because a permanent injunction limiting the liability of nondebtor parties is a rare thing that should not be considered absent a showing of "extraordinary circumstances."   *See Continental*, 203 F.3d

at 212; *Tribune*, 464 B.R. at 178 (interpreting *Continental* to allow non-consensual releases only in "extraordinary cases."); *Genesis*, 266 B.R. at 608.

WHEREFORE, the U.S. Trustee respectfully requests that the Court deny confirmation of the Plan in its current forms and grant such other relief as the Court deems appropriate and just.[6]

Dated: February 15, 2022          Respectfully submitted,
Wilmington, Delaware

**ANDREW R. VARA**
**UNITED STATES TRUSTEE**
**REGIONS 3 and 9**

By: */s/Richard L. Schepacarter*
    Richard L. Schepacarter
    Trial Attorney
    United States Department of Justice
    Office of the United States Trustee
    J. Caleb Boggs Federal Building
    844 N. King Street, Room 2207, Lockbox
    Wilmington, DE 19801
    (302) 573-6491
    (302) 573-6497 (Fax)
    Richard.Schepacarter@usdoj.gov

---

[6]    The U.S. Trustee reserves any and all rights, remedies and obligations to, among other things, complement, supplement, augment, alter or modify this objection, assert any further objection, file an appropriate motion, or conduct any and all discovery as may be deemed necessary or as may be required and to assert such other grounds as may become apparent upon further factual discovery.